# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBERT E. MOSS,

    Petitioner,

:

Case No. 1:09-cv-280

    -vs-

:

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,

    Respondent.

:

## REPORT AND RECOMMENDATIONS

Petitioner Robert Moss brought this habeas corpus action to seek relief from his conviction in the Hamilton County Common Pleas Court on one count each of felonious assault, involuntary manslaughter, and child endangering, resulting in sentences of eight, ten, and five years, ordered to be served consecutively (Petition, Doc. No. 1, PageID 1.) Petitioner pleads the following grounds for relief:

> **Ground No. 1:** Petitioner was deprived of due process access to available appellate remedies.
>
> **Supporting Facts:** The trial court failed to give petitioner any notice of his right to appeal the unlawful sentence imposed in this case, failed to advise of any appellate remedies at all, including the thirty day deadline for the filing of a notice of appeal.
>
> **Ground No. 2:** Petitioner was deprived of effective counsel by counsel's failure to advise of available appellate remedies.
>
> **Supporting Facts:** At no time during the proceedings did counsel ever advise petitioner of the existence of appellate remedies or the

>necessity to file within 30 days, and failed to advise petitioner that the sentence imposed was unlawful.
>
>**Ground No. 3:** Petitioner was denied due process of law by the imposition of an unlawful sentence.
>
>**Supporting Facts:** Petitioner was sentenced to multiple consecutive terms in the absence of statutory authority and subject matter jurisdiction to do so. There is no authority in Ohio law to impose consecutive sentences for base offenses, and any prior common law ability to do so was statutorily abrogated by the legislature.

(Petition, quoted in Return of Writ, Doc. No. 11, PageID 43-44.)

## Procedural History

Petitioner was indicted in 2007 by the Hamilton County grand jury on one count each of murder, involuntary manslaughter, and child endangering (Indictment, Doc. No. 11-9, PageID 147-149). In January, 2008, he appeared before Judge Helmick with counsel and entered a written plea of guilty to one count each of felonious assault, involuntary manslaughter, and endangering children (Entry, Doc. No. 11-9, PageID 151-152). He agreed with the prosecutor on a potential sentence of twenty-three years. *Id.*. He acknowledged "I understand my right to appeal a maximum sentence, my other limited appellate rights, and that any appeal must be filed within 30 days of my sentence." *Id.*. On January 22, 2008, Petitioner was sentenced to the twenty-three year term of confinement from which he now seeks relief. *Id...*, PageID 153.

Petitioner filed a Notice of Appeal and Motion for Delayed Appeal on October 6, 2008 (Notice, Doc. No. 11-9, PageID 156). As grounds for his delay, Petitioner asserted he "was never advised of his right to appeal, as demonstrated by the absence of such advisement in the Journal Entry of Sentence." *Id.*. PageID 161. He claimed a constitutional right to such advice from the sentencing court, citing *Wolfe v. Randle*, 267 F. Supp. 2d 745 (S.D. Ohio 2003)(Spiegel, J.). He

further asserted that his counsel failed to advise him of his right to appeal and claimed such advice is encompassed in his Sixth and Fourteenth Amendment rights to effective assistance of counsel, citing *Roe v. Flores-Ortega,* 528 U.S. 470, 479 (2000). He attached an Affidavit, swearing that his attorney never discussed an appeal with him. PageID 163, ¶¶ 2-3.

The Court of Appeals denied the Motion for Delayed Appeal on grounds Petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right." PageID 165. It also noted that there was an agreed sentence, referencing Ohio Revised Code § 2953.08(D). *Id...*

Mr. Moss then appealed to the Ohio Supreme Court, stating as applicable propositions of law:

> 1. The complete failure of Court and counsel to advise a defendant of his appellate rights constitutes sufficient reasons for a failure to timely file a notice of appeal and their refusal to permit a delayed appeal on such grounds deprives the defendant of due process and equal protection access to available appellate remedies.
>
> 2. A sentencing court is without subject matter jurisdiction to impose a sentence that is not expressly authorized by law and subject matter jurisdiction may not be obtained by waiver, and a sentence so imposed is void and violative of due process of law.

(Memorandum in Support of Jurisdiction, Doc. No. 11-9, PageID 168.) The Ohio Supreme Court declined to exercise jurisdiction in the case. *Id..*, PageID 177. Petitioner then filed the instant Petition.

## Analysis

## Generally Applicable Law

The Ohio courts did not render opinions on any federal constitutional questions embedded in Petitioner's attempt to obtain a delayed appeal. Therefore this Court considers those constitutional questions *de novo*.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62 (1991).

Habeas relief may be available where a violation of state law "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008), *cert denied*, 129 S. Ct. 1991 (2009). A claim of abuse of discretion by a state court judge is not sufficient to state a constitutional violation. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result on the constitutionalizing of every state rule, and would not

be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993).

### Ground One

In Ground One, Mr. Moss claims he was deprived of "due process access to available appellate remedies" in that the trial court did not advise him of any appellate process and of the thirty-day time limit for filing an appeal of right.

This claim is factually refuted by the face of the record. On the face of Petitioner's written guilty plea he acknowledged that he understood his appeal rights, including the obligation to file a notice of appeal within thirty days. Nowhere in his filings in this Court does Petitioner even attempt to explain the evident contradiction between his claim he was not advised and his signed written acknowledgment that he was advised.

Secondly, a state criminal defendant has no federal due process right to advice from the state trial court about his appeal rights. For the proposition that such a right exists, Petitioner cites *United States v. Butler*, 938 F.2d 702 (6th Cir. 1991)(cited at Traverse, Doc. No. 16, PageID 220). However, the Sixth Circuit in *Butler* was not discussing any constitutional principle and was not dealing with a state court conviction. Rather, it was interpreting Fed. R. Crim P. 32(a)(2) which requires advice of a right to appeal when a defendant has been convicted after trial.

Petitioner also relies on *Wolfe v. Randle*, 267 F. Supp. 2d 743 (S.D. Ohio, 2003)(cited at Traverse, Doc. No. 16, PageID 221). In that case, Judge Spiegel of this Court found that "[t]he right of notice is more fundamental than the rights previously guaranteed by the Supreme Court," 267 F. Supp. 2d at 747, citing *Evitts v. Lucey*, 469 U.S. 387 (1985), *Peguero v. United States,* 526 U. S. 23

(1999), *Griffin v. Illinois*, 351 U.S. 12 (1956); and *Douglas v. California*, 372 U.S. 353 (1963), as prior Supreme Court cases recognizing rights on appeal purportedly less fundamental than the right to notice. *Peguero* is not a constitutional case but, like *Butler*, involved Fed. R. Crim. P. 32; the Supreme Court unanimously rejected habeas corpus relief where the defendant was not properly advised of his right by the trial judge, but knew of it otherwise. In *Evitts*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment guaranteed a state criminal defendant the effective assistance of counsel on his first appeal of right, building on the holding in *Douglas* that there was a right to appointed counsel on first appeal of right for an indigent defendant, if the State created a first appeal of right. *Griffin* had held an indigent defendant-appellant must be furnished with a free transcript of trial proceedings if a transcript is required for the appeal.

While the extension of *Evitts, Douglas,* and *Griffin* to a due process right to notice of state appeal rights would certainly be logical, it is not an extension which is "clearly established" by holdings of the United States Supreme Court. Holdings of the Supreme Court point in the opposite direction as well. For example, the right to have an appeal is more fundamental even than the right to notice of appeal rights. Yet the Supreme Court has firmly and repeatedly held there is no federal constitutional right to direct appeal in state criminal proceedings. *McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d 339, 355 (6th Cir. 2005). "Due process does not require a State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120 (1995).

Because there is no clearly established federal constitutional right to notice of state appellate rights and because, in any event, Petitioner acknowledged in writing that he understood those rights, his first Ground for Relief is without merit.

**Ground Two**

In his second Ground for Relief, Petitioner claims he received ineffective assistance of trial counsel because his attorney did not advise him of his appellate remedies at all, of the need to file a notice of appeal within thirty days, and of the fact that his sentence was unlawful.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the Supreme Court rejected a *per se* rule which would require an attorney to file a notice of appeal regardless of whether the client asks. The Court held counsel must consult with the client about the advantages and disadvantages of taking an appeal when there is reason to think that a rational defendant would want to appeal or this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Mr. Moss claims this consultation never took place.

To the extent Petitioner relies on conversations with counsel which were not part of the court record, he has procedurally defaulted this claim. Ohio provides a remedy for ineffective assistance of trial counsel based on facts which do not appear in the record[1] and therefore cannot be addressed on direct appeal, to wit, a petition for post-conviction relief under Ohio Revised Code § 2953.21. But Mr. Moss has never filed such a petition and the time within which he could do so has expired.

Aside from the procedural default, Ground Two is without merit for a number of other

---

[1] It is reasonable to expect that attorney-client consultations will almost entirely take place off the record, in order to protect the attorney-client communications privilege. For this reason, most claims about what attorneys didn't do – the witnesses they didn't call, the leads they didn't follow up – are made and indeed must be made through 2953.21 proceedings.

reasons. Mr. Moss can show no prejudice from his attorney's failure to tell him that a notice of appeal had to be filed within thirty days because he acknowledged in writing that he knew that fact. He does not claim that he never told his attorney he had an interest in appealing. He has not demonstrated that a rational defendant in his situation would have wanted to appeal when he had negotiated both a substantial reduction in the charges against him and an agreed sentence. Indeed, his only stated theory about why he would have wanted to appeal has to do with the alleged unlawfulness of his sentence, which will be considered under Ground Three below. Finally, because the trial court had imposed an agreed sentence, he had no right of appeal under Ohio Revised Code § 2953.08.

Therefore, assuming his counsel did not advise him of whatever appellate rights he had, this failure did not constitute ineffective assistance of trial counsel under the *Flores-Ortega* standard. Ground Two should be dismissed with prejudice.

### Ground Three

In Ground Three Petitioner asserts he was deprived of due process of law by the imposition of an unlawful sentence. The core of Petitioner's claim is that Ohio Common Pleas courts lack the jurisdiction to impose consecutive sentences.

In deciding not to extend the *Apprendi-Blakely* line of cases to consecutive sentences, the Supreme Court held:

> The historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge. See, e.g., 1 J. Bishop, Criminal Law § 636, pp 649-650 (2d ed. 1858) ("[W]hen there are

-9-

> two or more convictions, on which sentence remains to be pronounced; the judgment may direct, that each succeeding period of imprisonment shall commence on the termination of the period next preceding."); A. Campbell, Law of Sentencing § 9:22, p 425 (3d ed. 2004) ("Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges."). This was so in England before the founding of our Nation, and in the early American States. Ice "has no quarrel with [this account] of consecutive sentencing practices through the ages." Brief for Respondent 32. The historical record further indicates that a judge's imposition of consecutive, rather than concurrent, sentences was the prevailing practice.

*Oregon v. Ice*, 129 S. Ct. 711, 718 (2009). Ohio had followed this traditional practice of committing the consecutive or concurrent sentence question to the discretion of trial judges until the adoption of Senate Bill 2 in 1996. While S.B. 2 was the law, Ohio trial judges were required to impose minimum concurrent sentences for felonies unless they made certain factual findings which would allow greater-than-minimum and consecutive sentences. Then in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006), the Ohio Supreme Court decided that, in permitting such findings to be made by the judge instead of a jury, S.B. 2 violated the United States Constitution as interpreted in *Blakely v. Washington*, 542 U.S. 296 (2004). Having found these portions of S.B. 2 unconstitutional, it severed them from the Ohio sentencing statutes and expressly held that judges could once again impose greater-than-minimum and consecutive sentences without making any factual findings whatever. In both *Foster* itself and *State v. Elmore*, 122 Ohio St. 3d 472 (2009), the Ohio Supreme Court confirmed that *Foster* does not eliminate the power of Ohio trial judges to impose consecutive sentences.

Petitioner claims, however, that "[i]n Ohio common law is abrogated, and this was never repealed. And if it was petitioner would like to know when this was done." (Traverse, Doc. No. 16,

-10-

PageID 222-223).  This is an overstatement.  Ohio has no common law **crimes**.  *Mitchell v. State*, 42 Ohio St. 383 (1884), citing *Key v. Vattier*, 1 Ohio 132, 144 (1823).  This means that no act can be punished criminally unless a statute proscribing that act has been passed by the legislature.  But that does not mean that the common law has been "abrogated" and indeed the Ohio courts have full power over the common law of Ohio, including criminal procedure.  *Galimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244, 253, 617 N.E. 2d 1052, 1059 (1993)("After all, who presides over the common law but the courts?")

Petitioner also claims that the Ohio Supreme Court lacked the power to sever portions of S.B. 2 (Traverse, Doc. No. 16, PageID 223), but fails to cite any authority for that proposition.  Certainly there is no proposition of federal constitutional law under which a state supreme court, having found portions of a state statute unconstitutional, is prohibited from exercising a severance remedy for that unconstitutionality.  If Petitioner is arguing the Ohio Supreme Court lacked this power as a matter of state law, he is arguing a question this Court has no authority to pass on; we must accept Ohio law as it has been decided by the Ohio courts.  See, e.g., *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003).

Because Petitioner's sentence is completely lawful under Ohio law, he is not entitled to relief on his third ground and his attorney was not ineffective for failing to suggest to him his incorrect argument about the lawfulness of his sentence.  Ground Three should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

June 5, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).